**ESTATE OF Emlyn JONES, Deceased, by Lorraine J. BLUME, its Personal Representative, Respondent,**

v.

**J. Peder KVAMME, Appellant,**

**John Kvamme, et al., Defendants.**

**No. CX–91–1359.**

Court of Appeals of Minnesota.

Feb. 11, 1992.

Review Granted in Part May 18, 1992.

Considered and decided by RANDALL, P.J., and NORTON and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Respondent obtained a judgment against appellant and attempted to garnish his individual retirement account (IRA) at Dain Bosworth (Dain). Appellant claimed the IRA was exempt from garnishment pursuant to Minn.Stat. § 550.37, subd. 24. The trial court concluded the IRA was not exempt because it had been used as security. The trial court also concluded the IRA was not reasonably necessary for the support of appellant, his spouse and dependents. We disagree and reverse.

## FACTS

In 1980 appellant rolled over $110,000 into an IRA at National Bank of Commerce/MidAmerica (Commerce). In March 1983, appellant withdrew funds from the Commerce IRA and opened the Dain IRA which is the subject of this action. In December 1983, Machine Power, a company controlled by appellant, applied for and received a $60,000 loan secured by UCC filings on inventory and accounts receivable. Appellant guaranteed the loan and listed the IRA on his personal financial statement. The "Loan Presentation" provided the loan is "conditioned upon purchase of a 5 yr C.D. @ 12% for IRA account—need letter agreement that no early withdrawal is allowed." Appellant also signed a letter stating:

> I will not cash the 5 year certificate of deposit for my IRA account before December 30, 1988, unless the Machine Power, Inc. dba Enterprise Machinery Company loan has been repaid prior to that date.

Based upon this evidence, the trial court concluded that "in December, 1983, [appellant] pledged a 5–year Certificate of Deposit in the National Bank IRA as collateral on a $60,000 loan."

In February 1991, Machine Power obtained a loan from Norwest Bank Mankato.

Daniel P. Taber, Minneapolis, Kevin O'C. Green Manahan, Bluth, Green, Friedrichs & Marsh, Mankato, for respondent.

William S. Borchers, William J. Joanis, Hessian, McKasy & Soderberg, P.A., Minneapolis, for appellant.

This loan was also secured by the company's inventory and accounts receivable. Appellant again personally guaranteed the loan and the loan officer noted "[p]ersonal F/S shows 183M liquid assets which include 180M IRA which he is eligible to withdraw." The trial court concluded this was another use of appellant's IRA as security for a loan. Accordingly, the court determined the IRA funds were not statutorily exempted because they had been distributed in 1991.

In April 1991, respondent attempted to garnish the Dain IRA which had a value of approximately $47,000. Appellant claimed the account was exempt from garnishment under Minn.Stat. § 550.37, subd. 24(1) and (2). The trial court, however, determined the full value of the IRA had been pledged as security for a loan and therefore must be treated as having been distributed in 1983 and in 1991. Because the funds were distributed, the court determined the IRA was not exempt from garnishment under Minn.Stat. § 550.37, subd. 24(1).

## ISSUE

Did the trial court err in determining appellant's IRA was subject to garnishment to satisfy a loan he personally guaranteed where appellant disclosed the IRA on his personal financial statement and agreed not to prematurely withdraw the IRA funds?

## ANALYSIS

■ The burden of establishing that funds are exempt from garnishment rests upon the debtor. Minn.Stat. § 550.37, subd. 20 (1990). Whether the IRA is subject to garnishment is a question of law. Therefore we need not defer to the trial court. *See A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.*, 260 N.W.2d 579, 582 (Minn.1977). Rather, we conduct an independent review of the record in light of the relevant law to determine if the trial court reached the proper legal conclusion. *Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 483 (Minn.1985).

■ The garnishment exemption statute provides:

Subdivision 1. The property mentioned in this section is not liable to * * * garnishment * * * on any final process, issued from any court.

\* \* \* \* \* \*

Subd. 24. **Employee benefits.** The debtor's right to receive present or future payments, or payments received by the debtor, under a[n] * * * individual retirement account, * * * or similar plan or contract on account of illness, disability, death, age, or length of service:

(1) to the extent the plan or contract is described in section 401(a), 403, 408, or 457 of the Internal Revenue Code of 1986, as amended, * * *; or

(2) to the extent of the debtor's aggregate interest under all plans and contracts up to a present value of $30,000 and additional amounts under all the plans and contracts to the extent reasonably necessary for the support of the debtor and any spouse or dependent of the debtor.

Minn.Stat. § 550.37 (1990). The vital question, therefore, is whether appellant's IRA fulfills the requirements of the Internal Revenue Code (IRC) sections cited in section 550.37. IRC section 408, which deals with IRA funds, provides:

If, during any taxable year of the individual for whose benefit an individual retirement account is established, that individual *uses* the account or any portion thereof *as security for a loan,* the portion so used is treated as *distributed* to that individual.

26 U.S.C. § 408(e)(4) (emphasis added).

In light of this statutory language, the issue is whether the loan applications amounted to the use of the IRA funds as security for the loans. The crucial question is what meaning should be given to the phrase "uses * * * as security" as provided in the IRC. This phrase is not defined in the IRC and has not been addressed in this context by the federal courts.

We conclude the phrase denotes a commercial arrangement whereby one party

obtains a right to seek recourse against property in return for the provision of some benefit. In other words, the term "security" means "an obligation [or] pledge * * * given by a debtor in order to assure the payment or performance of his debt, by furnishing the creditor with a resource to be used in case of failure in the principal obligation." Black's Law Dictionary 1216 (5th ed. 1979). The term, by its very definition, requires that the debtor provide the creditor with a resource the creditor can reach in case of default. This definition reveals that it is not sufficient merely to have an agreement that one party will refrain from cashing a certificate of deposit prematurely. The agreement, to become "security" for the debt, must go further and actually grant to the obligee a right to look to the property in satisfaction of the underlying obligation.

▇ We conclude the letter guaranteeing that appellant would not cash the certificate before the maturity date did not give the bank any "security" as defined in the IRC. The letter did not grant the bank any rights in the IRA or in the CD but only a right to hold appellant to his agreement to delay cashing the CD until its due date. At no time did appellant or the bank state or imply that the bank would be able to use the CD to satisfy the loan if Machine Power defaulted. Thus, the only enforceable obligation appellant made was that he would not cash the 5–year certificate of deposit before five years had passed or until the loan was repaid. Perhaps this agreement was part of an enticement package necessary to obtain the loan on behalf of the company. Such a use of an IRA, however, is not prohibited. Only when the use becomes "security," is it prohibited. This promise alone is not sufficient to constitute a "use" of the IRA as "security for a loan" as required by the IRC.

▇ Appellant argues the bank never obtained an Article 9 security interest in the property. He points out the bank failed to obtain a written security agreement covering the CD, it failed to file a financing statement and it never took possession of the CD. However, we are not persuaded that an Article 9 security interest is necessary in order for a party to "use" property as "security for a loan" as required by the IRC. A pledge can fall short of the legal requisites of a formal security interest yet still amount to "security for a loan." However, it is necessary that the party holding the security have some recourse against the property in the event of a default.

Respondent asserts the letter created an escrow agreement whereby appellant escrowed the CD and was unable to retrieve it until the business loan was fully paid. Respondent argues this type of arrangement was necessary because the bank, as trustee for appellant's IRA, was prohibited by 26 U.S.C. § 408(a)(4) from taking a security interest in the IRA and therefore needed an alternative means of using the IRA to secure the loan. The record, however, shows no evidence that appellant either surrendered possession of the CD or agreed to place it in escrow. In order to create an escrow account appellant must have delivered the CD to a third party to be held by the third party until the performance of a specified condition at which time it would be transferred to the obligee. *See Van Valkenburg v. Allen,* 111 Minn. 333, 335, 126 N.W. 1092, 1092 (1910). The parties must take affirmative action in order to establish an escrow arrangement. Respondent has introduced no evidence that the parties established such an arrangement and we decline to infer its existence.

Because we conclude appellant's IRA is exempt from garnishment pursuant to Minn.Stat. § 550.37, subd. 24(1), we do not rule on the remaining issues raised in this appeal. We decline to address the question of whether the IRA would be exempt under subdivision 24(2) and whether a negative covenant can create a security agreement.

## DECISION

Appellant's IRA is exempt from garnishment pursuant to Minn.Stat. § 550.37, subd. 24(1). Appellant's disclosure of an IRA on a loan application was not a "use" of the IRA as "security for a loan." The funds were not "distributed," thus the account never lost its character as an IRA

under section 408 of the Internal Revenue Code. Accordingly, the IRA is statutorily exempt from garnishment. The trial court therefore erred in determining the IRA was subject to garnishment.

Reversed.